IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | | |
|---|---|---|
| RENE RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. EP-10-CV-399-RPM |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties consented to trial on the merits before a United States Magistrate Judge. The case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules.

Plaintiff RENE RODRIGUEZ appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for benefits on the ground that he is not disabled within the meaning of the Social Security Act. After considering the briefs, the record evidence, the transcript of the administrative hearing and the written decision of the Administrative Law Judge ("ALJ"), the Court finds the final decision of the Commissioner should be AFFIRMED.

### BACKGROUND

Plaintiff was born on September 4, 1953, making him 56 years old at the time of the ALJ's

decision. (R. 26, 15).[1]  He has an eighth grade education and previous work experience as a laborer at a junk yard. (R. 27-29).  He testified he can no longer work due to constant radiating lower back pain for which he wears a brace, leg pain and numbness, arthritis pain in his elbows, wrist, fingers and shoulders, diabetes, high blood pressure, stomach problems, anemia, problems sleeping, headaches, dizziness, and red, burning, watery eyes. (R. 30-37).

## PROCEDURAL HISTORY

On January 15, 2008, Plaintiff filed an application for supplemental security income ("SSI") in which he alleged disability since January 1, 1997. (R. 106-112).  On March 10, 2008, his application was denied. (R. 58-62).  He requested reconsideration and was denied again on April 9, 2008. (R. 63-66).  On July 22, 2009, Plaintiff appeared with his attorney for an administrative hearing. (R. 23-51).  His application for benefits was denied by the ALJ's written decision issued on September 11, 2009. (R. 7-15).  On August 28, 2010, the Appeals Council denied Plaintiff's request to review the ALJ's decision, thereby making it the final decision of the Commissioner. (R. 1-3).

On October 28, 2010, Plaintiff filed a motion to proceed in forma pauperis with the filing of his complaint seeking judicial review of the administrative decision. (Doc. 1).  On November 1, 2010, Plaintiff's motion to proceed in forma pauperis was granted, and his complaint was filed. (Docs. 5 & 7).  On January 6, 2011, Defendant filed an answer. (Doc. 15).  The following day, the District Judge entered an order transferring the case to the undersigned for all proceedings, and a transcript of the administrative proceedings was filed. (Docs. 17 & 19).  On April 12, 2011, Plaintiff

---

[1] Reference to the transcript of the record of administrative proceedings filed in this case, (Doc. 19), is designated by "R." followed by the page numbers.

filed his brief in support of reversing the Commissioner's decision and remanding for an award of benefits or, in the alternative, for additional administrative proceedings. (Doc. 23). On May 12, 2011, the Commissioner's brief was filed. (Doc. 24). This matter is now ripe for decision.

## DISCUSSION

A. Standard of Review

This Court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence on the record as a whole, and whether the proper legal standards were applied in evaluating the evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001), citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

In applying the substantial evidence standard, a court must carefully examine the entire record, but may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). It may not substitute its own judgment "even if the evidence preponderates against the Secretary's decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). If the Commissioner's findings are supported

by substantial evidence, they are conclusive and must be affirmed. *Spellman v. Shalala*, 1 F.3d at 360.

B. Evaluation Process and Burden of Proof

An individual applying for benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). A disability is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the individual from engaging in substantial gainful activity. 42 U.S.C.A. § 423(d)(1)(A) (West Supp. 2011); 20 C.F.R. § 416.905(a) (2011). Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 416.972(a)-(b) (2011).

Disability claims are to be evaluated according to a five-step sequential process. 20 C.F.R. § 416.920(a) (2011). A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d at 236. In the first step, it is determined whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i) (2011). If so, the claimant is found not disabled regardless of his medical condition or his age, education and work experience. *Id.*

In the second step, it is determined whether the claimant's impairment is severe. 20 C.F.R. § 416.920(a)(4)(ii) (2011). If the impairment is not severe, the claimant is deemed not disabled. *Id.* If the impairment is severe and meets the duration requirement, the third step of the evaluation directs that the impairment be compared to a list of specific impairments in Appendix 1 to Subpart P of Part 404 of the regulations. 20 C.F.R. § 416.920(a)(4)(iii) (2011). If the claimant's impairment meets or equals a listed impairment, he is deemed disabled without considering his age, education

4

or work experience. *Id.*

If the impairment is not on the list of specific impairments in Appendix 1, the fourth step requires a review of the claimant's residual functional capacity ("RFC") and the demands of his past work. 20 C.F.R. §416.920(a)(4)(iv) (2011). If he can still do this kind of work, he is not disabled. *Id.* If he cannot perform his past work, the fifth and final step evaluates the claimant's ability, given his RFC and his age, education and work experience, to do other work. 20 C.F.R. § 416.920(a)(4)(v) (2011). If he cannot do other work, he will be found to be disabled. *Id.*

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by the use of administrative guidelines provided in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work. *Anderson v. Sullivan*, 887 F.2d at 632.

C. The ALJ's Decision

In his written decision, the ALJ determined Plaintiff had not engaged in substantial gainful activity since January 15, 2008, the amended alleged onset date.[2] (R. 12). At the next step, the ALJ

---

[2] The originally alleged onset date of January 1, 1997, was amended twice at the administrative hearing. First, the date was amended to January 15, 2008. (R. 30). Later in the hearing, it was amended to September 4, 2008, the date of Plaintiff's 55th birthday. (R. 48). The ALJ's written opinion, however, references an onset date of January 15, 2008. (R. 10, 12, 15).

determined Plaintiff has medically determinable impairments consisting of diabetes mellitus, hypertension, low back pain, arthritis, anemia and depression. *Id.* The ALJ determined at step two, however, that Plaintiff does not have a severe impairment or combination of impairments, and, therefore, is not disabled. (R. 12-15).

D. Claim Presented

Plaintiff contends the ALJ's finding that he does not have a severe impairment is the result of the application of an incorrect legal standard and is not supported by substantial evidence. Plaintiff requests that the Court reverse the Commissioner's decision that he is not entitled to benefits, and remand for an award of benefits, or alternatively, for further administrative proceedings.

E. Evidence Relevant to Claims

    1. Testimony at the Administrative Hearing

On July 22, 2008, an administrative hearing was held. (R. 23-51). Plaintiff appeared, represented by his attorney, and testified to the following. He was born on September 4, 1953, making him 55 years old on the date of the hearing. (R. 26). He and his wife live in a room of his father's house. (R. 27).

Plaintiff attended school through the eighth grade, and has some problems with reading, writing and basic math. (R. 28). He last worked in 1995 as a laborer at a junkyard removing parts from vehicles. (R. 28-30, 46-47). He worked eight hours a day, five days a week, and was paid minimum wage. (R. 46). He testified he can no longer work due to constant radiating lower back pain for which he wears a brace, leg pain and numbness, arthritis pain in his elbows, wrist, fingers and shoulders, diabetes, high blood pressure, stomach problems, anemia, problems sleeping, headaches, dizziness,

and red, burning, watery eyes. (R. 30-37).

Plaintiff testified he takes pills for diabetes. (R. 32-33). He checks his blood sugar weekly, which usually ranges from 97 to 100. (R. 33). Plaintiff stated his stomach "[h]urts a lot." *Id.* He also testified he takes B-12 injections for anemia, but he still has problems. (R. 34). He has problems sleeping because he needs to urinate about every two hours during the night. *Id.* He attributes the frequent urination to his diabetes medication. (R. 35). He has daily headaches for which he takes aspirin. *Id.* He also takes medication for high blood pressure. *Id.* He experiences dizziness as a medication side effect. (R. 36). He has red, burning, watery eyes which he guesses is caused by medication. (R. 37). He is losing his teeth due to diabetes, but cannot afford dental care. (R. 38).

Plaintiff testified he lies down for thirty minutes about three to four times daily because he doesn't sleep well at night. (R. 36). He is able to walk for about a block or two before he has to stop and rest. (R. 36-37). He can remain standing for about 15 to 20 minutes and can remain sitting for about 30 to 45 minutes. (R. 37). The most he can lift from table height is about ten pounds. *Id.*

In response to the ALJ's questions, Plaintiff testified to the following. He has a driver's license and drives about twice weekly. (R. 39). He drove to the location of the hearing, a distance of about ten miles. *Id.* He is 5 feet 5 inches tall and weighs 160 pounds. *Id.* He has not worked since 1995 because he has "been getting sick a lot." (R. 40). He has never been incarcerated. *Id.* Plaintiff and his wife receive about $300 per month in food stamps. *Id.* He receives discounted medical care at the San Vicente Clinic. (R. 41).

The ALJ asked Plaintiff to rate his daily pain on a scale of one to ten, with ten being the worst, and Plaintiff rated his pain "about eight." *Id.* When Plaintiff was asked by the ALJ if he had any medication side effects, Plaintiff replied, "I don't think so." *Id.* Plaintiff stated he needs to urinate

7

every two hours during the day, as well as during the night. *Id.* Plaintiff testified the doctor has not told him what is causing his back pain. *Id.* He has not undergone any surgery, physical therapy or other treatment for his back pain. (R. 42). Plaintiff takes ibuprofen for his back pain, and it helps a little. *Id.* He takes aspirin for his arthritis as recommended by his doctor. *Id.*

Plaintiff has been taking monthly B-12 shots since 2007 for anemia, and they help a little. (R. 42-43). He testified the anemia makes him dizzy, and he feels like fainting. (R. 43). Although he has never lost consciousness, he feels faint about every two weeks. *Id.* He sometimes feels depressed, but he does not take any medication for depression and has not received any treatment for depression. (R. 43-44). He experiences burning eyes for about 10 to 15 minutes once a week. (R. 44). He uses eye drops for relief. *Id.*

When questioned by the ALJ about his daily activities, Plaintiff replied he doesn't do anything. (R. 44). He can fix a sandwich for himself, but he does not do any housework or laundry. (R. 44-45). His wife does all the household chores. *Id.* Plaintiff does not believe he could perform the household chores without pain. (R. 45).

Kay Gilreath, a vocational expert ("VE"), also testified at the hearing. *Id.* The VE testified Plaintiff's past work as a laborer is classified as unskilled work performed at the heavy to very heavy exertional level.[3] (R. 47). The ALJ asked the VE to assume an individual of the same age, education and past relevant work experience as Plaintiff, and to further assume the individual can work at the medium exertional level, lifting and carrying 25 pounds frequently and 50 pounds occasionally, and can stand and/or walk and sit for up to 6 hours out of an 8 hour day, taking short breaks every two

---

[3] The VE clarified that the Dictionary of Occupational Titles ("DOT") does not contain a specific listing for pulling parts in a salvage yard, but the job as performed by Plaintiff ranged between the heavy and very heavy exertional levels. (R. 49-50).

8

hours. The ALJ asked the VE to further assume this individual can never climb ladders, ropes, or scaffolding, can never work at unprotected heights, can never do jobs requiring balance, and should have no jobs requiring working with hazards or dangerous equipment or driving. (R. 48-49). Based on the hypothetical, the VE opined the hypothetical individual could not perform Plaintiff's past relevant work which was at the heavy exertional level. (R. 49). The VE further opined that the same hypothetical individual would be able to perform medium unskilled work as a laundry worker or as a kitchen helper. *Id.*

Plaintiff's counsel was given an opportunity to question the VE. He asked the VE to add to the hypothetical the need to take two to three unscheduled breaks during the work day to lie down for up to 45 minutes each time. (R. 50). The VE opined that such a limitation would eliminate all types of employment. *Id.*

2. Medical Evidence

On April 10, 2007, Plaintiff was seen by Dr. Luna at Centro San Vicente Clinic for a follow up visit. (R. 212-213). Notes indicate Plaintiff's diabetes was controlled. His fasting blood sugar level was 81, and his blood pressure was 104/80. His platelets were low. He was counseled about discontinuing alcohol use. Lab work was ordered to assess Plaintiff's B-12 and folic acid levels. He was to return to the clinic in six weeks.

On May 25, 2007, Plaintiff was seen by Dr. Luna for a follow up regarding abnormal lab results. (R. 210-211). His vitamin B-12 level was low. (R. 223). He was given a vitamin B-12 injection. The notes indicate Plaintiff was continuing to drink alcohol daily. His blood pressure was 110/76, and his blood sugar was 97. He was to follow up in one month.

On June 22, 2007, Plaintiff was seen by Dr. Luna for a follow up visit related to his B-12

deficiency. (R. 208-209). He was given a vitamin B-12 injection. Progress notes indicate Plaintiff reported degenerative joint disease pain, especially of his back and hands. His fasting blood sugar was 93. His blood pressure was 102/64. He was to return in one month.

On July 27, 2007, Plaintiff was seen by Dr. Luna for a follow up regarding B-12 deficiency. (R. 206-207). Plaintiff's exam was reported to be unchanged, and no other problems were noted. His blood pressure was 112/72, and his blood sugar was 144. He was given a vitamin B-12 injection, and asked to return to the clinic in one month.

On September 4, 2007, Plaintiff was seen for a follow up visit with Dr. Luna. (R. 204-205). He was given a vitamin B-12 injection. His fasting blood sugar was 81, and his blood pressure was 90/64. No new complaints were noted, and he was to return in one month.

On October 10, 2007, Plaintiff was seen by Dr. Luna for a follow up visit related to pernicious anemia.[4] (R. 202-203). He was given a vitamin B-12 injection. His non-fasting blood sugar was 86, and his blood pressure was 108/70. He was to return for a follow up visit in three months.

On January 31, 2008, Plaintiff was seen by Dr. Luna for follow up of pernicious anemia and diabetes mellitus. (R. 200-201). He was given a vitamin B-12 injection. His fasting blood sugar was 80, and his blood pressure was 110/70. No new problems were noted. Plaintiff's diabetes was reported to be stable, and he was to return in two months.

A Case Assessment Form dated March 6, 2008, by Randal Reid, M.D., a state agency medical consultant, indicates Plaintiff's medically determinable impairments of diabetes and anemia are non-

---

[4] Pernicious anemia is a type of megaloblastic anemia usually seen in older adults, caused by impaired intestinal absorption of vitamin B-12 due to lack of availability of intrinsic factor. DORLAND'S ILLUS. MEDICAL DICTIONARY 78 (29th ed. 2000).

severe. (R. 214). The summary of pertinent medical evidence indicates Plaintiff's recent blood sugar levels were normal. He was given a B-12 shot and told to return in two months. Dr. Reid concluded Plaintiff's alleged limitations were not supported by the evidence of record.

Plaintiff was seen on April 1, 2008, by Dr. Luna for a B-12 injection. (R. 217-218). At that time, he complained of having back pain for the past year. He was to return for a B-12 injection in one month and schedule a follow up visit in three months.

On July 1, 2008, Plaintiff was seen for a follow up with Dr. Luna regarding lab results, diabetes, hypertension and pernicious anemia. (R. 227-228). He received a B-12 injection. His fasting blood sugar was 89, and his blood pressure was 120/72. He was to return to the clinic in three months.

On April 8, 2009, Leigh McCary, M.D., a state agency medical consultant, reviewed the evidence in the file related to Plaintiff's medically determinable impairments of diabetes mellitus, hypertension and pernicious anemia. (R. 215). Dr. McCary affirmed Dr. Reid's assessment dated March 6, 2008, and concluded Plaintiff's allegations were not wholly supported by the evidence on record.

F. Analysis of Plaintiff's Claim

Plaintiff contends the ALJ's finding that he does not have a severe impairment is the result of the application of an incorrect legal standard and is unsupported by substantial evidence. Specifically, Plaintiff argues the ALJ did not apply the correct standard for evaluating the severity of an impairment in accordance with the Fifth Circuit decision in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). Plaintiff argues the evidence, when evaluated under the *Stone* standard, shows his impairments are severe, and the ALJ should not have terminated his analysis at step two of the five-step sequential

process.

At step two, the ALJ determines whether an impairment is severe, irrespective of the claimant's age, education or work experience. 20 C.F.R. §§ 416.920(a)(4)(ii) & 416.920(c) (2011). Pursuant to the Commissioner's regulations, a severe impairment is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c) (2011). The Fifth Circuit, however, has held that a literal application of this regulation would be inconsistent with the Social Security Act because it would deny benefits to individuals who are disabled under the statute. *Stone*, 752 F.2d at 1104-05. Accordingly, in this Circuit, an impairment is not severe "only if it is a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone*, 752 F.2d at 1101, quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984) (citations omitted).

To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to the *Stone* opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984)[5] is used. Unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106. Notwithstanding this presumption, "[a] case will not be remanded simply because the ALJ did not use 'magic words.' We remand only where there is no indication the ALJ applied the correct standard." *Hampton v. Bowen*, 785 F.2d 1308,

---

[5] The definition of "severe" at 20 C.F.R. § 404.1520(c) is the same as the definition of "severe" at 20 C.F.R. § 416.920(c).

12

1311 (5th Cir. 1986).

The Commissioner contends the citations in the ALJ's decision show that the proper legal standard to determine severity at step two was applied in this case. Although the ALJ did not use the exact wording from *Stone*, he cited to the *Stone* opinion and to *Bowen v. Yuckert*, 482 U.S. 137 (1987),[6] as well as to the agency's regulations and rulings, including 20 C.F.R. § 416.921, SSR 85-28,[7] SSR 96-3p,[8] and SSR 96-4p.[9] The Commissioner further contends substantial evidence supports the ALJ's determination.

In the "Applicable Law" section of his decision, the ALJ stated:

> "An impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p."

---

[6] "*Yuckert* simply upheld the facial validity of the severity regulation as an appropriate method of streamlining the review process. *Yuckert* did not conclude that the severity regulation properly interpreted the statutory requirements, and *Yuckert* did not purport to state the proper definition of the term 'severe impairment.' Thus, *Stone* is not inconsistent with the Supreme Court's pronouncement in *Yuckert*; *Stone* merely reasons that the regulation cannot be applied to summarily dismiss, without consideration of the remaining steps in the sequential analysis, claims of those whose impairment is more than a slight abnormality." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 294 (5th Cir. 1992).

[7] SSR 85-28 states it was intended to clarify that the agency's policy regarding the step two severity determination is consistent with various court decisions, including *Stone*. SSR 85-28 (1985) (Titles II and XVI: Medical Impairments that are Not Severe).

[8] SSR 96-3p restates and clarifies policies for consideration of allegations of pain or other symptoms. SSR 96-3p (1996) (Policy interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medially Determinable Impairment is Severe).

[9] SSR 96-4p clarifies policies for evaluating symptoms. SSR 96-4p (1996) (Policy interpretation Ruling Titles II and XVI: Symptoms, Medically Determinable Physical and Mental Impairments, and Exertional and Nonexertional Limitations).

(R. 11).

Next, under the caption "FINDINGS OF FACT AND CONCLUSIONS OF LAW," the ALJ stated the severity standard as follows:

> "In order for an impairment to be considered severe, it must impose more than a slight limitation on the individual's ability to perform basic work-related activities as described in the regulations. Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), Bowen v. Yuckert, 107 S.C.T. [sic] 2287 (1987), SSR 85-28." (R. 12).

The ALJ also wrote:

> The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 C.F.R. 416.921; Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985)). (R. 12).

The ALJ made a final reference to the severity standard when he stated:

> The undersigned Administrative Law Judge concurs with the determination made by the Disability Determination Service, in that the evidence shows that the claimant's ability to perform basic work activities was not as limited as he alleged, and that the evidence of record fails to establish that any of the claimant's complaints rise to the level of a "severe" impairment as defined by the Act and Regulations. Stone v. Heckler, 752 F 2nd [sic] 1099 (5th Cir. 1985)[.][10] (R. 14).

The ALJ's decision, resting on a finding of non-severity, cited to *Stone*. Therefore, there is no presumption that an incorrect severity standard was applied. See *Stone*, 752 F.2d at 1106; compare *Rangel v. Astrue*, 605 F.Supp.2d 840 (W.D. Tex. 2009) (Remanding case where ALJ did not explicitly reference *Stone* or a similar decision applying the *Stone* standard, and it was not clear whether the ALJ applied the *Stone* standard). Moreover, a review of the evidence shows the ALJ applied the correct severity standard.

---

[10] Although not identified by the ALJ, it appears that the referenced document is the Case Assessment Form completed by Randal Reid, M.D., which indicates Plaintiff's medically determinable impairments of diabetes and anemia are non-severe. (R. 214).

As noted in the ALJ's opinion, the medical evidence shows Plaintiff's diabetes and hypertension were well-controlled. His anemia was treated with monthly B-12 injections. The ALJ's conclusion that Plaintiff's pain is intermittent and mild to moderate at most is supported by substantial evidence. Plaintiff takes only aspirin and Tylenol for pain relief. He has received no treatment for his alleged depression. The record does not contain any opinions from treating or examining physicians indicating any limitations or imposing any restrictions, contrary to Plaintiff's allegations of totally disabling symptoms.

In support of his claim that his impairments are severe under the *Stone* standard, Plaintiff cites to pages 208, 242 and 244 of the record. Plaintiff claims these records support Plaintiff's testimony that he cannot work due to back pain and arthritis in his elbows, wrist and fingers. The pages Plaintiff cites are multiple copies of the same records from one doctor's visit on June 22, 2007 (nearly fifteen months before the onset date at issue) at which Plaintiff made a subjective complaint of pain in his back and hands. The notes from the visit show Plaintiff rated his pain at one, on a scale of zero to five, with one meaning "hurts little bit." (R. 208, 242). The record does not show any tests or treatment were prescribed at that visit related to Plaintiff's subjective complaint of pain.

Plaintiff also relies on his need to wear a back brace[11] and his testimony that his pain radiates to other parts of his body,[12] and he has numbness. Plaintiff does not point to any medical records or objective medical findings in support of these statements. Objective medical evidence, at least in part, must corroborate a claimant's subjective complaints. *Wren v. Sullivan*, 925 F.2d 123, 128-29 (5th Cir.

---

[11] There is no medical record indicating the back brace was prescribed for Plaintiff by a doctor.

[12] Plaintiff testified the pain from his lower back goes through "[p]arts of the middle or from my neck." (R. 31).

15

1991). The ALJ found the objective clinical findings did not support the degree of pain and functional limitations which Plaintiff alleged. (R. 14). He concluded Plaintiff's allegations concerning the severity of his symptoms were not wholly credible. *Id.* The ALJ's determination that the medical evidence was more persuasive than Plaintiff's own testimony is precisely the kind of determination the ALJ is best positioned to make. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

Although the ALJ did not quote the exact language from *Stone*, he applied the proper legal standard in determining Plaintiff's impairments, either singly or in combination, are not severe. Further, the ALJ's step two decision is supported by substantial evidence. Accordingly, the Court finds there was no legal error committed by the ALJ.

## CONCLUSION

It is therefore ORDERED that the decision of the Commissioner be, and it is hereby, AFFIRMED.

SIGNED and ENTERED this 5TH day of March, 2012.

_____
RICHARD P. MESA
UNITED STATES MAGISTRATE JUDGE